IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AETNA, INC., | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 15-1868 |
| HEALTH DIAGNOSTIC LABORATORY INC., BLUEWAVE HEALTHCARE CONSULTANTS, INC., FLOYD CALHOUN DENT, III, ROBERT BRADFORD JOHNSON, AND LATONYA MALLORY, | : | |
| Defendants. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                December 28, 2015

Presently before the Court is Defendants, Bluewave Healthcare Consultants, Inc. ("Bluewave"), Floyd Calhoun Dent, III ("Dent"), and Robert Bradford Johnson's ("Johnson") (collectively "Bluewave Defendants") Motion to Dismiss Plaintiff's Amended Complaint and Memorandum of Law in Support thereof, and Plaintiff, Aetna Inc.'s ("Aetna") Response in Opposition thereto. For the reasons set forth below, Bluewave Defendants' Motion is denied.

**I.      BACKGROUND**

This case involves an alleged fraudulent billing scheme that included paying illegal kickbacks to physicians, encouraging physicians to order unnecessary blood tests, and providing unlawful inducements to patients in the form of waived patient co-pays, co-insurance, and deductibles. (See Am. Compl. ¶ 1.) Plaintiff filed a Complaint on April 10, 2015, against Health Diagnostic Laboratory, Inc. ("HDL"), Bluewave, Bluewave's owners Dent and Johnson, and Latonya Mallory ("Mallory"), the CEO of HDL. (See Compl.) Bluewave Defendants filed a

Motion to Dismiss the Complaint against Bluewave on July 10, 2015, and Plaintiff subsequently filed its First Amended Complaint on August 31, 2015.  Presently before this Court is Bluewave Defendants' Motion to Dismiss the Amended Complaint filed on October 19, 2015, and Plaintiff's Response in Opposition filed on November 30, 2015.

Aetna provides health insurance and administrative services for benefits plans to clients throughout the country.  (See Am. Compl. ¶ 10.)  A network of medical providers agrees to provide the health care benefits for Aetna members at a negotiated rate.  (Id. ¶ 25.)  These medical providers have an obligation to refer patients to other in-network providers or facilities, where possible, to help Aetna control costs.  (Id. ¶ 28.)  Members do have the option to receive out-of-network benefits provided that they are liable for increased co-payments due to Aetna not having a contracted rate with the provider.  (Id. ¶¶ 29-30.)

Defendant HDL was a clinical laboratory that performed diagnostic tests on patient's blood samples, which were sent to HDL from referring physicians.  (Id. ¶¶ 3, 11.)  HDL announced on April 9, 2015, that it was paying at least $47 million to federal authorities to resolve allegations of the federal False Claims Act, which Plaintiff alleges involves the same types of overbilling schemes that are alleged in this case.  (See id. ¶ 3; Ex. A.)  HDL recently filed for protection under the federal bankruptcy laws, and a stay of proceedings against it is in effect.  (Id. ¶ 4.)

Plaintiff avers that Defendant Bluewave "employed, trained, and supported a sales and marketing force that directly marketed HDL products and services to physicians across the country."  (Id. ¶ 15.)  Defendants Dent and Johnson are the co-founders of Bluewave, and each owns a 50% stake in the company.  (Id. ¶ 16.)

Plaintiff alleges that Bluewave Defendants directly contacted numerous referring physicians throughout the nation, and told these physicians that they would receive a payment to refer blood samples to HDL for analysis. (Id. ¶ 35.) This payment to the physicians is alleged to have been at least $20 dollars for each referral to HDL, which is more than six times the rate permissible by Medicare. (Id. ¶ 41.) Plaintiff avers that Bluewave Defendants benefited from this scheme because they entered into a sales agreement with HDL to receive a commission from the revenue collected by HDL from sales generated by Bluewave. (Id. ¶¶ 18, 20; Ex. B.) Plaintiff alleges that in the sales agreement, Bluewave Defendants "agreed to actively market and promote practices which involved paying kickbacks to physicians, offering unlawful inducements to patients and physicians, encouraging physicians to order unnecessary panels of blood tests, and other unlawful practices." (Id. ¶ 18; Ex. B.)

Due to the increased cost of using HDL services because of its status as "out-of-network," Plaintiff alleges that HDL would waive these large out of pocket expenses for Aetna members to induce the members to use HDL's services. (Id. ¶ 50.) Plaintiff avers that HDL failed to disclose to Aetna both the kickback scheme and the fact they were discounting Aetna's members' billing. (Id. ¶¶ 43, 54.) Due to these non-disclosures, Aetna paid more than it should have been required to pay because HDL was essentially giving a discount to Aetna members, and the payments made from Aetna to HDL were made based on a percentage of the billed charges. (Id. ¶¶ 54-55.) Additionally, Plaintiff alleges that since Bluewave was paid a percentage of what HDL received, Bluewave Defendants directly benefited from their participation in the scheme by securing more than $200 million dollars in improper commissions from 2010 to 2014. (Id. ¶¶ 20-21.)

Plaintiff's Amended Compliant avers that the fraudulent scheme implemented by all of the Defendants resulted in fraud (Count I), tortious interference with business and contractual relations (Count II), civil conspiracy (Count III), and unjust enrichment (Count IV).[1]  (Id. ¶¶ 64-88.)  Bluewave Defendants filed a Motion to Dismiss the Amended Complaint, and we will limit our analysis to the allegations in the Amended Complaint solely pertaining to Bluewave Defendants.

## II.     STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. 544, 555 (2007).  Following Twombly, the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that [they do] not provide a defendant the type of notice which is contemplated by Rule 8."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'"  Id. (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8).  Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level."  Id. at 234 (quoting Twombly, 550 U.S. at 555).  "This 'does not impose a probability requirement at

---

[1] Pennsylvania law applies because federal courts sitting in diversity cases must apply the substantive law of the states where they sit.  Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).

4

the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S. at 556).

Notwithstanding Twombly, the basic tenets of the Rule 12(b)(6) have not changed. The Knit With v. Knitting Fever, Inc., No. 08-4221, 2009 WL 973492, at *6 (E.D. Pa. Apr. 8, 2009). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations. Phillips, 515 F.3d at 231. Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff. Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

### III.  DISCUSSION

#### A.  *Fraud Claim*

To state a claim of fraud under Pennsylvania law, a plaintiff must plead: (1) representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. Youndt v. First Nat'l Bank of Port Allegany, 868 A.2d 539, 545 (Pa. Super. Ct. 2005). Bluewave Defendants argue that Plaintiff's fraud claim should fail for several reasons, which will be discussed separately in detail below.

### 1. Fraud Claim Against Bluewave Defendants in Particular

Bluewave Defendants argue that the fraud claim against them should be dismissed because Plaintiff has not alleged they said anything false. (Mot. to Dismiss Am. Compl. at 7.) Bluewave Defendants argue that since Plaintiff alleged that HDL, not Bluewave, directly sent the false bills to Aetna; only HDL can be liable for fraud. (Id.) Additionally, Bluewave Defendants make an argument that Plaintiff did not sufficiently allege how Bluewave was involved in the fraud. (Id. at 8.)

Bluewave Defendants' arguments, however, are misplaced. "[U]nder the common law of fraud, a person may be liable if he authorized another person to make the fraudulent misrepresentation or in some way participated therein." Goodman v. De Azoulay, 554 F. Supp. 1029, 1037 (E.D. Pa. 1983) (citing Auto Transit Co. v. Koch, 71 Pa. Super. Ct. 171, 175-78 (Pa. Super. Ct. 1919)); see also First Capital Corp. v. Country Fruit, 19 F. Supp. 2d 397, 401 (E.D. Pa. 1998) ("A person cannot be held liable for fraudulent misrepresentation unless he made the statement himself, or authorized another person to make that statement, or in some manner participated in it."). Thus, the current Pennsylvania law places no requirement on Plaintiff to prove that Bluewave Defendants directly sent the false claims to Aetna. Rather, Plaintiff has the burden to prove, amongst the other requirements required for fraud, that Bluewave Defendants "participated in" the perpetration of a fraudulent act. Goodman, 554 F. Supp. at 1037.

Plaintiff's Amended Complaint sufficiently shows Bluewave Defendants' participation in the fraud by highlighting their sales and marketing involvement in the unlawful scheme that led to large financial returns for their company. (See Am. Compl. ¶¶ 5, 17-21, 35-37, 42, 54.) This involvement was not only alleged, but was evidenced both by a sales agreement between Bluewave Defendants and HDL and the pending *qui tam* action that discussed Bluewave

6

Defendants' involvement in the scheme with HDL.[2] (Ex. A; Ex. B.) Contrary to what Bluewave Defendants contest, Plaintiff addressed how Bluewave was directly involved with the scheme on numerous occasions in the Amended Complaint. This Court does not need to restate these examples as Plaintiff already has sufficiently done so in its response. (See Plaintiff's Resp. in Opp'n at 10.) For these reasons, we find that Plaintiff's Amended Complaint sufficiently set forth Bluewave Defendants' participation in the unlawful billing scheme involving HDL and Aetna.

### 2. Aetna's Fraud Claim Pleaded with the Requisite Specificity

Bluewave Defendants also argue that Plaintiff has not sufficiently pleaded the allegations with enough specificity under Federal Rule of Civil Procedure Rule 9(b) to establish a claim of fraud against any of the defendants. (Mot. to Dismiss Am. Compl. at 9.) The purpose of Rule 9(b) is to place the defendants on notice of the precise misconduct with which they are charged. Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004) (citing Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)). A plaintiff "may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" Id. at 224 (quoting Seville, 742 F.2d at 791). In general, to satisfy Rule 9(b), the plaintiff must allege who made the misrepresentation, to whom that misrepresentation was made, and the "general content" of the misrepresentation. Id. at 224. It must be noted that Bluewave Defendants' use of

---

[2] In Latin, the phrase *qui tam* is short for "*qui tam pro domino rege quam pro se ipso in hac parte sequitur*," which translates as, "who pursues this action on our Lord the King's behalf as well as his own." United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 509 n. 1 (3d Cir. 2007) (quoting Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 769 n.1 (2000)); see also Black's Law Dictionary (9th ed. 2009). Thus, a *qui tam* action permits private parties to bring suit to enforce the law on the Government's behalf and rewards successful plaintiffs with part of the recovery. United States ex rel. Zizic v. Q2Administrators, LLC, 728 F.3d 228, 231 n.1 (3d Cir. 2013) (quoting United States ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 647 n.1 (D.C. Cir. 1994)).

In re Suprema, Inc., Sec. Lit., 438 F.3d 256 (3d Cir. 2006), is misplaced as that case dealt with fraud as it pertains to securities and is not applicable to the facts of this case.

      This Court finds that Plaintiff has met the burden for the required specificity under Rule 9(b). Plaintiff has set forth the entire scheme implemented by HDL and informed Bluewave Defendants of their alleged integral role in the scheme. (See Am. Compl. ¶¶ 15, 42, 48, 54.) Considering the Amended Complaint arises under the same facts and circumstances as the *qui tam* action that Bluewave Defendants are keenly aware, Plaintiff has pleaded more than sufficient allegations to put them on notice of the alleged fraud. To require anything more at this stage in the case would essentially turn this into discovery and place a tremendous and unlawful burden on Plaintiff. See Markovich v. Vasad Corp., 617 F. Supp. 142, 147 (E.D. Pa. 1985) ("[Rule 9(b)] does not require particularity to the degree so as to supplant general discovery methods."). Thus, Bluewave Defendants have the essential facts necessary to answer the Amended Complaint. Republic Envtl. Sys., (PA) v. Reichhold Chems., 154 F.R.D. 130, 131 (E.D. Pa. 1994) ("If the defendant can prepare an adequate answer to the complaint, the requirements of Rule 9(b) have been met."). For these reasons, we find that Plaintiff's fraud claim satisfies Rule 9(b).

      **3. Active Concealment v. Mere Silence in a Fraud Claim**

      Bluewave Defendants argue that Plaintiff cannot state a claim for fraud because, in cases of non-disclosure, there must be a corresponding duty to speak; a duty that they contest is not present. (Mot. to Dismiss Am. Compl. at 10-12.) This Court agrees with Plaintiff that Bluewave Defendants' argument is a mischaracterization of Plaintiff's claim. "Pennsylvania law recognizes a difference between active concealment and mere silence in the context of common law fraud." Gnagey Gas & Oil Co. v. Pa. Underground Storage Tank Indemnification Fund, 82

A.3d 485, 500 (Pa. Commw. Ct. 2013) (citing Wilson v. Donegal Mut. Ins. Co., 598 A.2d 1310, 1315-16 (Pa. Super. Ct. 1991); Smith v. Renaut, 564 A.2d 188, 192 (Pa. Super. Ct. 1989)); see Am. Planned Cmty., Inc. v. State Farm Ins. Co., 28 F. Supp. 2d 964, 968 (E.D. Pa. 1998) (citing Wilson ) (acknowledging that "[c]oncealment alone may create a sufficient basis for finding that a party engaged in fraud so long as the other elements of fraud are present")). Pennsylvania common law subsumes and recognizes the tort of fraudulent concealment as stated in the Restatement (Second) of Torts § 550 ("Restatement § 550"), which imposes liability for intentional concealment of material information regardless of any duty to disclose. Am. Planned, 28 F. Supp. 2d. at 968 (citing Roberts v. Estate of Barbagallo, 531 A.2d 1125 (Pa. Super. Ct. 1987).

Under the "active concealment" theory, liability occurs when "[o]ne party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information." Gnagey, 82 A.3d at 501 (citing Restatement (Second) of Torts § 550). This theory applies in a few circumstances including when there is "an intentional concealment of true facts which is calculated to deceive the other party." Baker v. Cambridge Chase, Inc., 725 A.2d 757, 769 (Pa. Super. Ct. 1999). In contrast, the "mere silence" theory imposes liability for nondisclosure of information when the defendant has a specific duty to disclose, "which arises only in certain enumerated circumstances." Gnagey, 82 A.3d at 501 (citing Restatement (Second) of Torts § 551).

Accepting Plaintiff's Amended Complaint as true, Bluewave Defendants actively and knowingly participated in a scheme that involved intentionally providing Aetna with false documents with the desire to have Aetna overpay for services rendered. (Am. Compl. ¶¶ 52, 54-56.) Contrary to what Bluewave Defendants argue, these allegations would be sufficient to state

9

a claim for fraud under the active concealment theory since they alleged intentional conduct meant to deceive. See Baker, 725 A.2d at 769. Bluewave Defendants argue that the two active concealment examples given in the comments of Restatement § 550 are exclusive; however, the comments make it very clear that is not how the examples are intended to be read. Restatement (Second) of Torts § 550 at cmt. a (stating that the Restatement is "commonly applied in two types of situations, although it is not limited to them").

Additionally, Plaintiff would not need to prove an affirmative duty to disclose as Bluewave Defendants argue because that only arises when a party cannot prove active concealment and must rely on a non-disclosure theory. Gnagey, 82 A.3d at 501 (citing United States v. Colton, 231 F.3d 890, 899-900 (4th Cir. 2000) (noting that "'active concealment' constitutes fraud even if there is no independent legal duty to disclose the information, while the concept of 'mere silence' requires the disclosure of information only if there is a positive statutory, regulatory, or legal duty mandating disclosure.")). Plaintiff has pleaded sufficient facts that it may be entitled to relief under an active concealment theory. Accordingly, Bluewave Defendants' request to dismiss the fraud claim made against them is denied.

### B. *Tortious Interference With Business And Contractual Relations*

Bluewave Defendants argue that Plaintiff's claim for tortious interference with business and contractual relations should fail for three reasons, which will be discussed below in detail. It must first be noted that Bluewave Defendants cite improper standards under Pennsylvania law for tortious interference as it applies to the facts in the present case. Bluewave Defendants set forth the standards relying on the case of Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494 (3d Cir. 1998). (Mot. to Dismiss Am. Compl. at 16.) The Brokerage case, however, set the standards for a claim brought under Restatement Second § 768. Id. at 529-30 (discussing

how case will be analyzed under Restatement Second § 768).  § 768 does not apply to the facts in the current case because it deals with situations of unfair competition.  See Restatement (Second) of Torts § 768.  Nothing in this case makes any mention of unfair competition.  Rather, Plaintiff rightfully pointed out that its case should be analyzed under Restatement Second § 766 dealing with intentional and improper interference with a contract via a third party.  See Restatement (Second) of Torts § 766.

Therefore, the proper standard under Pennsylvania law for analyzing the facts of this case is the following:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person **by inducing or otherwise causing the third person not to perform the contract**, is subject to liability to the other for the pecuniary loss resulting to the other from the third person's failure to perform the contract.

Fishkin v. Susquehanna Partners, G.P., 563 F. Supp. 2d 547, 586 (E.D. Pa. 2008) (emphasis added) (quoting Restatement (Second) of Torts § 766).  Thus, the elements of a claim for tortious interference are: (1) an existing contractual relationship; (2) the defendant's purposeful or intentional interference with the performance of that contract by inducing a breach or otherwise causing the third party not to perform; (3) the defendant's lack of privilege to interfere; and (4) pecuniary loss resulting from the breach of contract.  Id.  (citing Remick v. Manfredy, 238 F.3d 248, 263 (3d Cir. 2001)).

### 1. Harm to Contractual Relationship

Bluewave Defendants first argue that Plaintiff's claim for tortious interference must fail because it has not alleged that its contractual relationships with providers or members were harmed or jeopardized.  (Mot. to Dismiss Am. Compl. at 14.)  This argument is misplaced as it applies the incorrect standard of Restatement (Second) of Torts § 768, as explained above, to the

11

facts of this case.  Plaintiff need not prove any relationships were harmed; rather, it needs only to prove that a third person [Bluewave] induced a third party not to perform a contract.  See Restatement (Second) of Torts § 766.  If such a situation is proven, Plaintiff would be entitled to receive "the pecuniary loss of the benefits of the contract."  Pawlowski v. Smorto, 588 A.2d 36, 40 (quoting Restatement (Second) of Torts § 774A).

Accepting the Amended Complaint as true, Plaintiff has pleaded the required elements for a tortious interference claim as explained in their Response in Opposition:

> Aetna's contracts with participating providers included the requirement that they refer Aetna members to in-network medical providers or facilities.  (Am. Compl. ¶ 28.)  By inducing participating providers to refer Aetna members to HDL instead of in network labs, the Bluewave Defendants caused those providers to breach their contracts with Aetna, and Aetna to lose the benefit of paying the lower, in-network rates. (Id. ¶¶ 46, 48, 74.)  Similarly, Aetna's members were responsible for their share of the costs of the laboratory services.  (Id. ¶ 49.)  By inducing members to use HDL instead of in-network labs, by waiving these member payments, the Bluewave Defendants caused Aetna to lose the benefit of cost sharing requirements.  (Id. ¶¶ 54-55.)  Under each of these relationships, the Bluewave Defendants' illegal interference caused Aetna to lose the benefit of its bargained-for agreements.

(See Plaintiff's Resp. in Opp'n at 17.)  For these reasons, this Court concludes that Plaintiff has sufficiently pleaded the elements of tortious interference at this stage in the case.

### 2.  Contracts Specifically Identified

Bluewave Defendants next argue that Plaintiff has not identified any contract with the required specificity in its tortious interference claim.  Essentially, Bluewave Defendants want Plaintiff to list all of the contracts that it had with a provider or member that has been harmed.  At this early stage of the case, that type of burden placed on Plaintiff would be extreme and unnecessary.  Bluewave Defendants will certainly be able to obtain such information but not until the discovery phase.  At this point, Plaintiff has provided plenty of details in the Amended Complaint regarding the material terms of the contracts Aetna had with its members, medical

providers, laboratories, and other medical facilities. (Am. Compl. ¶¶ 73, 75.) Bluewave Defendants were provided with sufficient notice of the contracts at this early stage in the case. For these reasons, Plaintiff has satisfied its pleading burden for the contracts under rule 8(a). See Fed. R. Civ. P. 8(a)(2) (requiring only "a short and plain statement of the claim").

### 3. Damages to Aetna

Finally, Bluewave Defendants argue that the tortious interference claim should fail because the physicians make an independent decision and ultimately decide where to send the samples, which breaks the chain of causation and results in no proximate harm caused to Aetna on behalf of Bluewave Defendants. (Mot. to Dismiss Am. Compl. at 15-16.) Bluewave Defendants' argument mischaracterizes Plaintiff's claim and is not supported by Pennsylvania law because the Restatement makes it clear that a party can be liable by "inducing or otherwise causing the third person not to perform the contract." See Restatement (Second) of Torts § 766 ("one who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability"). Therefore, it is irrelevant whether the physicians ultimately decided where to send the samples because Plaintiff is arguing that Bluewave Defendants improperly induced the physicians to send their samples to HDL. Accordingly, Bluewave Defendants' request to dismiss the tortious interference claim made against them is denied.

### C. *Unjust Enrichment*

Next, Bluewave Defendants argue that Plaintiff's claim for unjust enrichment fails for two reasons, which will be discussed below in detail. To establish a claim of unjust enrichment, a party must allege "[1.] benefits conferred on defendant by plaintiff, [2.] appreciation of such

benefits by defendant, and [3.] acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. Ct. 1993) (citing Wolf v. Wolf, 514 A.2d 901 (Pa. Super. Ct. 1986)).

### 1. Benefit Conferred

Bluewave Defendants first argue that since Aetna paid HDL, and not Bluewave, no benefits were conferred upon Bluewave. (Mot. to Dismiss Am. Compl. at 16.) Plaintiff correctly points out that there is no requirement for "directly" conferring a benefit upon a Defendant under Pennsylvania law for an unjust enrichment claim. (See Plaintiff's Resp. in Opp'n at 20-21.) Plaintiff explains:

> "Plaintiffs need not have directly dealt with each defendant in order to allege a claim for unjust enrichment against them. The claim of unjust enrichment simply requires that plaintiff 'confer' benefits on a defendant; it does not require that plaintiff 'directly confer' those benefits." Sheller v. Equitrac, Civ. A. No. 07-2310, 2008 U.S. Dist. Lexis 44691, at *14 (E.D. Pa. June 9, 2008) (quoting Baker v. Family Credit Counseling Corp., 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006))…. Where the plaintiff makes payments to a third party, but that third party then passes all or a part of that payment onto the defendant, courts will find that the plaintiff "conferred a benefit" on the defendant. See Sheller, 2008 U.S. Dist. Lexis 44691, at *15 (noting that while the plaintiff directly paid its lessor for office equipment under the terms of the lease, the plaintiff "conferred a benefit" on the equipment manufacturer because those payments were remitted from the lessor to the manufacturer).

Id.

Thus, there is no need to make an inquiry into whether HDL paid Bluewave directly. Plaintiff alleges that Bluewave Defendants received proceeds from the fraudulent scheme implemented by HDL against Aetna. (Am. Compl. ¶ 69.) Plaintiff further elaborated that Bluewave Defendants would receive commissions ranging from 13.8% to 19.8% of the revenue collected by HDL from the sales generated by Bluewave. (Am. Compl. ¶ 20; Ex. B.) Thus, a

portion of the benefit of a payment paid from Aetna to HDL would then pass to Bluewave in the form of a commission. This chain of causation is easily followed and whether the payment was first paid to HDL is inconsequential. See In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 545 (D.N.J. 2004) (applying Pennsylvania law and finding "the relevant inquiry is whether there is a sufficient nexus between the conferrer of the benefit and the recipient, not whether there is a legal obligation to pay on the part of a third-party payor").

Bluewave Defendants rely on a case that states "a third party is not unjustly enriched when it receives a benefit from a contract between two other parties where the party benefitted has not requested the benefit or misled the other parties." D.A. Hill Co. v. Clevetrust Realty Investors, 573 A.2d 1005, 1010 (Pa. 1990). This Court agrees with Plaintiff that the Clevetrust case is inapplicable to the current case because it centered on a third party receiving the benefit of a contract. Aetna and HDL did not have a contract because HDL was not an in-network provider; therefore, a third party [Bluewave] did not benefit from a contract because no contract existed. For these reasons, we find that Plaintiff has sufficiently alleged that benefits were conferred upon Bluewave Defendants in its unjust enrichment claim.

### 2. Retaining the Benefit it Received from Aetna

Bluewave Defendants next argue that the unjust enrichment claim fails because it was not inequitable for HDL to retain the benefits it received from Aetna because HDL was an out-of-network provider and was therefore free to set the price of its services. (Mot. to Dismiss Am. Compl. at 18.) Plaintiff alleges that it had to pay more than it should have as a result of Defendants paying illegal kickbacks and waiving members' payment obligations without disclosing that information. (Am. Compl. ¶ 59.) This Court cannot accept Bluewave Defendants' argument. The fact that HDL can set it prices with Aetna does not mean that HDL

was free to implement a fraudulent scheme resulting in Aetna being misled to pay more because HDL purposely did not disclose vital payment information.  For these reasons, we find that Plaintiff has set forth enough allegations to survive a 12(b)(6) motion to dismiss that it was inequitable for HDL to retain the payments it received from Aetna.  Accordingly, Bluewave Defendants' request to dismiss the unjust enrichment claim made against them is denied.

### D. *Civil Conspiracy*

Bluewave Defendants next argue that the conspiracy claim must fail because the substantive underlying claims have failed.  (Mot. to Dismiss Am. Compl. at 19.)  This Court has found that Plaintiff's underlying claims for fraud, tortious interference, and unjust enrichment have sufficiently been pleaded; therefore, we deny Bluewave Defendants' Motion as it pertains to the civil conspiracy claim.

### E. *Claims Against Floyd Calhoun Dent, III and Robert Bradford Johnson Individually*

Finally, Bluewave Defendants make the argument that Plaintiff cannot maintain claims against Dent and Johnson individually because they have not alleged facts to prove they can pierce the corporate veil of Bluewave to reach its corporate officers. (Mot. to Dismiss Am. Compl. at 19.)  Plaintiff alleges that they are attempting to attack Defendants individually through a "participation theory," and not through a piercing the corporate veil theory.  This Court has recognized that a corporate officer can be personally liable under Pennsylvania law under "the participation theory":

> There is a distinction between liability for individual participation in a wrongful act and an individual's responsibility for any liability-creating act performed behind the veil of a sham corporation. Where the court pierces the corporate veil, the owner is liable because the corporation is not a bona fide independent entity; therefore its acts are truly his. Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the

16

> individual corporate officer. Instead, liability attaches where the record establishes the individual's participation in the tortious activity.

Oldcastle Precast, Inc. v. VPMC, Ltd., No. 12–6270, 2013 WL 1952090, at *14 (E.D. Pa. May 13, 2013), reconsideration denied, No. 12–6270, 2013 WL 3865112 (E.D. Pa. July 26, 2013) (citing Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983)).

"Participation theory, in simple terms, is a theory which imposes personal liability on corporate officers or shareholders where they have personally taken part in the actions of the corporation." First Realvest, Inc. v. Avery Builders, Inc., 600 A.2d 601, 604 (Pa. Super. Ct. 1991). The Pennsylvania Supreme Court further explained this personal liability:

> The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor [sic]; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein.

Wicks, 470 A.2d at 90.

Piercing the corporate veil is the exception, and courts should start from the general rule that the corporate entity should be upheld unless specific, unusual circumstances call for an exception. Id. In order to pierce the corporate veil in Pennsylvania, courts look at several different factors: (1) whether or not corporate formalities were observed and corporate records were kept; (2) whether other corporate officers and directors existed other than the shareholder; and (3) whether the dominant shareholder has used the assets of the corporation for his own personal use. Village at Camelback Prop. Owners Ass'n, Inc. v. Carr, 538 A.2d 528, 533 (Pa. Super. Ct. 1988).

Plaintiff relies entirely on a "participation theory" as they make no mention of any of the piercing the corporate veil factors. It is easiest to understand the "participation theory" with

17

prior case law that distinguishes between "misfeasance" and "nonfeasance." A corporate officer must have engaged in misfeasance to be liable under a "participation theory" and will not be liable for nonfeasance. See Shay v. Flight C Helicopter Services, 822 A.2d 1, 17 (Pa. Super. Ct. 2003); see also Brindley v. Woodland Vill. Rest., Inc., 652 A.2d 865, 868 (1995) (noting distinction as misfeasance, i.e., "the improper performance of an act" and nonfeasance, i.e., "the omission of an act which a person ought not to do").

In Loeffler v. McShane, 539 A.2d 876 (Pa. Super. Ct. 1988), the Court concluded that a corporate officer, who supervised the refinancing of a mortgage, could be held individually liable for the loss suffered by the mortgagors when the corporate officer negligently authorized payment of the mortgagors' settlement funds to the wrong party. By contrast, in Shay, a plaintiff sued for wrongful death resulting from a negligently maintained helicopter. 822 A.2d at 7-8. The plaintiff sued the president individually under the "participation theory." Id. at 17-18. The Court determined that the tortious conduct was completed by another employee and not the president. Id. The court held, at most, the president engaged in acts of nonfeasance by, for example, failing to inspect the work done by the other employee. Id. Therefore, he could not be liable under the "participation theory" because he did not actually participate in any of the negligence maintenance. Id.

Plaintiff highlighted the occasions in the Amended Complaint in which they accused Dent and Johnson of personally participating in the fraud:

> Aetna alleges that Dent and Johnson left their former business with the specific intent to assist HDL in perpetrating its fraud on Aetna and other payors. (Am. Compl. ¶ 17.) Dent and Johnson personally planned, authorized, and directed the fraud, and signed the contract with HDL that memorialized their agreement to work together to implement their fraudulent business practices. (Id. ¶¶ 2, 18.) They hatched a scheme to develop sales and marketing personnel to promote Defendants' improper business practices throughout the country, and personally directed Bluewave's marketing personnel to publicize that HDL would waive

> member payment obligations. (Id. ¶¶ 18, 51.)  They also personally directed HDL to submit bills to Aetna without disclosing that those billed charges had already been discounted to the patient, and thus contained false and fraudulent charges. (Id. ¶ 54.)  Because Dent and Johnson each own 50% of Bluewave, and own additional interests in HDL, they personally profited from HDL's and Bluewave's fraud. (Id. ¶¶ 16, 21.)

(See Plaintiff's Resp. in Opp'n at 25.)

Plaintiff has alleged numerous instances of misfeasance on the part of Dent and Johnson. Plaintiff alleges that they "personally participated" in the fraudulent scheme.  This case is in its infancy and there is not enough information in the record to fully determine whether Dent and Johnson did actually personally participate in the fraudulent scheme.  However, recognizing the early stage of this case, this Court will allow Plaintiff to attempt to develop this issue in discovery.  Thus, for purposes of this Motion, Plaintiff has sufficiently pleaded Dent and Johnson's personal involvement in accordance with the liberal notice pleading requirement of Federal Rule of Civil Procedure 8.  Accordingly, we will not dismiss the claims against Dent and Johnson in their individual capacity at this time.

**IV.    CONCLUSION**

In accordance with the above, we deny Bluewave Defendants' Motion to Dismiss the Amended Compliant on all grounds.

An appropriate Order follows.